**FILED**

**April 25, 2017**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 3:31 PM**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT KNOXVILLE

| | | |
|---|---|---|
| ANGIE LINDSAY,<br>　　　　Employee, | ) | Docket No.: 2016-03-1099 |
| v. | ) | |
| CVS DISTRIBUTION CENTER,<br>　　　　Employer, | ) | State File No.: 93296-2015 |
| And | ) | |
| NEW HAMPSHIRE COMPANY,<br>　　　　Carrier. | ) | Judge Lisa A. Lowe |
| | ) | |

### EXPEDITED HEARING ORDER
### GRANTING MEDICAL BENEFITS AND DENYING TEMPORARY
### DISABILITY BENEFITS

This matter came before the undersigned Workers' Compensation Judge on the Request for Expedited Hearing filed by the Employee, Angie Lindsay, on April 5, 2017. The central legal issue is whether Ms. Lindsay's right knee injury arose primarily out of and in the course and scope of her employment or was idiopathic. Related issues are whether she is entitled to additional medical benefits to include surgery recommended by Dr. Paul Becker and whether she is entitled to past and/or ongoing temporary disability benefits.

For the reasons set forth below, the Court finds Ms. Lindsay is likely to prevail at a hearing on the merits that her right knee injury arose primarily out of and in the course and scope of her employment. However, the Court concludes at this time she is not likely to prevail at a hearing on the merits that she is entitled to temporary disability benefits.

### History of Claim

Ms. Lindsay began working as a prescription "picker" for CVS on September 28, 2015. Ms. Lindsay testified there were narrow aisles that she and the other "pickers" had to cross to retrieve the medication from a conveyor belt and then place in a tote. On October 29, Ms. Lindsay took medication from the conveyor line, and as she walked

1

down the narrow aisle, she twisted to the left so a co-worker could pass. As she turned, she heard a pop and felt instant pain in her right knee. Ms. Lindsay reported the injury to her supervisor, who failed to provide a physician panel. Ms. Lindsay continued to work that day but experienced pain, which affected her ability to perform her work.

One week later, Ms. Lindsay sought unauthorized medical treatment from her primary care physician, Dr. David Hassell, who ordered diagnostic testing and prescribed Tylenol. Upon follow up, Dr. Hassell rendered a diagnosis of sprained patellar ligament but noted an absence of any significant swelling or dislocation of the patella following the date of injury.

CVS eventually provided Ms. Lindsay with a panel of physicians from which she selected Dr. John McElligott. Dr. McElligott diagnosed her with a sprained knee and recommended physical therapy and an injection. After a subsequent follow-up visit, Dr. McElligott diagnosed right knee internal derangement and right knee bursitis. There appeared to be some discrepancy within Dr. McElligott's medical records, as he originally noted Ms. Lindsay as "off work" for her functional capability. However, in a response to a letter from the adjuster, Dr. McElligott clarified that he did not take Ms. Lindsay "off work"; instead, he meant she was currently not working because she had been terminated by CVS. After providing unsuccessful conservative care, Dr. McElligott ordered an MRI, which revealed a medial meniscal tear and degenerative arthritis. At that point, Dr. McElligott referred Ms. Lindsay to orthopedic surgeon, Dr. Paul Becker.

After a thorough examination, including review of the MRI results, Dr. Becker recommended an arthroscopic medial meniscectomy repair. In addition, Dr. Becker assigned Ms. Lindsay restrictions of "no climbing, pulling, pushing, stooping, or bending." In response to a causation letter, Dr. Becker checked that it was his opinion, considering all causes, that Ms. Lindsay's medial meniscus tear arose primarily out of and in the course and scope of her employment on or about October 2015. CVS submitted the surgery request to its Utilization Review agent, which denied the procedure as not medically necessary.

CVS terminated Ms. Lindsay on December 23. CVS' Human Resources Business Partner, Paula Hulette, testified by deposition that she based Ms. Lindsay's termination on productivity and quality issues. Ms. Hulette acknowledged that if a person could not repetitively stoop or bend or push or pull, those restrictions would affect her productivity as a picker.

At the hearing, Ms. Lindsay asserted her injury was not idiopathic. She contended walking in the small area and having to move to shuffle out of the way so co-workers could pass created an employment hazard. Ms. Lindsay acknowledged that she suffered some pre-existing knee problems. However, Dr. Becker, the authorized treating physician, reviewed the MRI report, which showed her pre-existing arthritis, yet he still

2

found her meniscus tear work-related. She alleged that since Dr. Becker is the authorized treating physician and CVS did not provide a contrary medical opinion, the Court should award her benefits. Finally, Ms. Lindsay alleged she is entitled to sixty-seven weeks of temporary disability benefits in the amount of $17,000.

CVS countered that Ms. Lindsay's injury was idiopathic because she did not slip and fall or hit her knee on anything. She merely turned around, which could have happened anywhere. There was no hazard incident to her employment that caused her injury. In addition, CVS argued that Ms. Lindsay suffered pre-existing right knee pain that she did not disclose to either Dr. McElligott or Dr. Becker. As a result, Dr. Becker did not have Ms. Lindsay's full medical history when he provided his causation opinion. CVS argued if the Court does not find that Ms. Lindsay's injury was idiopathic, Ms. Lindsay should return to Dr. Becker so he can review the past medical records and provide an updated opinion. With regard to temporary benefits, no physician took Ms. Lindsay completely off work. Dr. Becker first assigned restrictions in July 2016 and CVS had light duty work available for Ms. Lindsay had CVS not terminated her for cause during her ninety day probation period.

### Findings of Fact and Conclusions of Law

*Standard Applied*

The following legal principles govern this case. Because it is in a posture of an Expedited Hearing, Ms. Lindsay need not prove every element of her claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Instead, she must come forward with sufficient evidence from which this Court might determine she is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2016).

*Applicable Authority*

The Workers' Compensation Law requires employers to provide injured employees with reasonable and necessary medical care related to a work injury. A work-related injury causes a need for medical treatment if, within a reasonable degree of medical certainty, it contributed more than fifty percent to the need for treatment. To meet the "reasonable degree of medical certainty" standard requires a physician opinion that it is more likely than not, considering all possible causes, as opposed to speculation. *See* Tenn. Code Ann. §§ 50-6-204(a)(1)(A), 50-6-102(14)(C), and 50-6-102(14)(D) (2016).

3

*Nature of Ms. Lindsay's Injury*

"An idiopathic injury is one that has an unexplained origin or cause, and generally does not arise out of the employment unless 'some condition of the employment presents a peculiar or additional hazard.'" *Frye v. Vincent Printing Co., et al.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 34, at *11 (Aug. 2, 2016). Moreover, an injury resulting from an idiopathic condition is compensable "if an employment hazard causes or exacerbates the injury." *Id.* at *11-12. "Cause" in this context is not "proximate cause" as used in the law of negligence; rather, "cause" means that the accident originated in the hazards to which the employee was exposed. *Id.*

In this case, Ms. Lindsay testified that there were narrow aisles that she and co-workers walked to transfer the medication to the totes. She provided uncontroverted testimony that she injured her knee when she twisted and turned in the narrow aisle to get out of a co-worker's way. CVS did not offer any testimony or evidence to refute Ms. Lindsay's testimony. CVS merely argued that Ms. Lindsay could have twisted her knee anywhere, and just because she did so at work does not make it a work-related injury. Since no other evidence or testimony was provided, the Court finds Ms. Lindsay's testimony about the narrow aisles and necessity of twisting so co-workers can pass credible. The Court further holds that the narrow aisles and necessity of twisting so co-workers can pass created a peculiar hazard incident to Ms. Lindsay's employment. Thus, her knee injury arose primarily out of and in the course and scope of her employment and is compensable.

*Medical Benefits*

Having found Ms. Lindsay's injury compensable, the Court looks to the medical proof to determine whether she is entitled to additional medical treatment. Under Tennessee workers' compensation law, the panel-selected physician's causation opinion is presumed correct, as is the treatment he recommends. However, that opinion might be rebutted by a preponderance of the evidence. *See* Tenn. Code Ann. §§ 50-6-102(14)(E) and 50-6-204(a)(3)(H) (2016); *see also Morgan v. Macy's,* 2016 TN Wrk. Comp. App. Bd. LEXIS 39, at *17 (Aug. 31, 2016).

In this case, Dr. Becker is the authorized treating physician. CVS cross-examined Ms. Lindsay with regard to 2011 and 2014 medical records referencing right knee pain. Ms. Lindsay acknowledged that she did not tell Dr. Becker about her pre-existing knee problems because she said he did not ask her. Dr. Becker was aware that Ms. Lindsay's MRI showed degenerative changes in addition to the tear, and he opined her injury arose primarily out of and in the course and scope of her employment. CVS argues that if Dr. Becker knew about Ms. Lindsay's pre-existing knee problem, it may change his causation opinion. However, CVS did not provide any of this information to Dr. Becker. This Court would be engaging in speculation if it were to presume Dr. Becker's opinion would

4

change upon being presented with this information.

Being that Dr. Becker determined causation in favor of Ms. Lindsay and that CVS did not provide any medical opinion to rebut Dr. Becker, this Court holds that Ms. Lindsay has come forward with sufficient medical evidence that establishes her current knee condition, for which she requires surgery, arose primarily out of and in the course and scope of her employment. As a result, she is entitled to receive ongoing medical treatment with Dr. Becker, to include the recommended surgery.

*Temporary Disability Benefits*

Finally, the Court must also consider Ms. Lindsay's request for temporary disability benefits. An injured employee is eligible for temporary disability benefits if: (1) the employee is unable to work due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the employee established the duration of the period of disability. *Jones v. Crencor Leasing and Sales*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). Temporary total disability benefits are terminated either by the ability to return to work or attainment of maximum recovery. *Id.* An employee is entitled to receive temporary partial disability benefits, pursuant to Tennessee Code Annotated section 50-6-207(2), when an employee is temporarily unable to work but "the temporary disability is not total." *Jewell v. Cobble Constr. and Arcus Restoration,* 2015 TN Wrk. Comp. App. Bd. LEXIS 1, at *22 (Jan. 12, 2015).

The medical proof establishes that Dr. McElligott never took Ms. Lindsay off work. Dr. Becker assigned restrictions of no climbing, pulling, pushing and no repetitive stooping or bending on July 13, 2016; however, Ms. Lindsay did not provide any other medical records to indicate the duration of those restrictions. In addition, Ms. Lindsay did not provide testimony as to whether she has been employed elsewhere since being terminated by CVS. Therefore, the Court holds at this time that Ms. Lindsay has not established that she is likely to prevail at a hearing on the merits that she is entitled to temporary disability benefits. Since Ms. Lindsay did not provide sufficient documentation/testimony to warrant temporary disability benefits at this time, it is not necessary for the Court to address the issue of her termination and whether it was a valid termination for cause.

**IT IS, THEREFORE, ORDERED** as follows:

1. Medical care for Ms. Lindsay's injuries shall be paid and CVS Distribution Center or its workers' compensation carrier shall provide Ms. Lindsay with reasonable, necessary, and related medical treatment, to include surgery recommended by the authorized treating physician, Dr. Becker.

5

2. Ms. Lindsay's claim against CVS Distribution Center and its workers' compensation carrier for the requested temporary disability benefits is denied at this time.

3. This matter is set for a Scheduling Hearing on June 21, 2017, at 9:30 a.m. Eastern Time. The parties must call 865-594-0109 or 855-383-0003 toll free to participate in the Scheduling Hearing. Failure to appear by telephone may result in a determination of the issues without your further participation.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 25th day of April, 2017.**

_____
**HON. LISA A. LOWE**
**Workers' Compensation Judge**

# APPENDIX

<u>Exhibits:</u>
1) Affidavit of Angie Lindsay
2) Affidavit of Paula Hulette with the following exhibits:
    o 90 Day Probationary Guidelines
    o Employee handbook Receipt and Verification Acknowledgment
    o CVS Attendance Advisory
    o Separation Notice
3) Deposition Transcript of Paula Hulette
4) First Report of Work Injury, Form C-20
5) Wage Statement, Form C-41
6) Panel of Physicians, Form C-4
7) Coverage Correspondence from CVS Health, January 3, 2017
8) Medical Records of John McElligott, MD, Occupational Health Systems
9) Return to Work Report of Dr. John McElligott
10) Return to Work Status Report of Knoxville Orthopedic Clinic
11) Causation Opinion of Dr. Paul Becker
12) Medical Records Table of Contents of:
    o Results Physiotherapy
    o Cherokee Health Systems
    o Knoxville Orthopedic Clinic
    o Outpatient Diagnostic Center of Knoxville
13) Discovery Responses

<u>Technical Record:</u>
1) Petition for Benefit Determination
2) Dispute Certification Notice
3) Request for Expedited Hearing
4) Employer's Response in Opposition to Employee's Request for Expedited Hearing
5) Supplemental Request for Expedited Hearing
6) Employer's Response in Opposition to Employee's Supplemental Request for Expedited Hearing
7) Scheduling Order
8) Order Denying Employee's Motion and Supplemental Motion to Reconsider or Alter this Court's Order Granting Employer's Motion to Compel Discovery
9) Employer's Prehearing Brief
10) Notice of Filing Affidavit of Paula Hulette
11) Notice of Filing Deposition of Paula Hulette
12) Notice of Filing Questionnaire Responses from Authorized Treating Provider

Stipulations:
1) Average Weekly Wage $395.33/Comp Rate $263.57
2) Proper notice of injury provided
3) Date of Injury: October 29, 2015
4) Termination date: December 23, 2015

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 25th day of April, 2017.

| Name | Certified Mail | Fax | Email | Service sent to: |
|------|----------------|-----|-------|------------------|
| Tim McLaughlin, Employee's Attorney | | | X | tmclaughlin@nmknoxlaw.com |
| Alex B. Morrison, Employer's Attorney | | | X | ABMorrison@mijs.com |

PENNY SHRUM, Court Clerk
WC.CourtClerk@tn.gov